RAMSEY v. STATE OF INDIANA.

[No. 26,108.   Filed December 20, 1932.]

214

A. T. *Livengood* and V. E. *Livengood,* for appellant.
*James M. Ogden,* Attorney-General, and *Harry Taylor,* Assistant Attorney-General, for the State.

TREANOR, C. J.—Appellant was charged by affidavit in one count with automobile banditry[1] under §§2425 and 2548 Burns Ann. Ind. St., Supp. 1929 (Acts of

[1] The affidavit was as follows:
"Czar Hershberger being duly sworn upon his oath says that Harry Ramsey, John William King and William Wright on or about the 12th day of January, 1931, at and in Fountain County, Indiana, did then and there unlawfully, feloniously and forcibly and by violence and putting in fear one Paul Linker attempt to rob, take and steal from the person of the said Paul Linker three slot machines then and there of the value of $300.00 belonging to said Czar Hershberger, the said Harry Ramsey, John William King and William Wright, then and there having at said time and place on or near the premises where said felony was attempted to be committed by them, as aforesaid, a self-moving conveyance, to-wit: an automobile by the use of which they intended, then and there, to escape, contrary," etc.

1929, ch. 54, pp. 136, 137, §§1, 3[2]). The jury returned the following verdict:

". . . We, the jury, find the defendant guilty of the crime of an assault with intent to commit robbery as charged in the affidavit . . ."

Appellant assigns the following as error:

1. The court erred in overruling appellant's motion for a change of venue of said cause, from the county.

2. The court erred in overruling appellant's motion in arrest of judgment.

3. The court erred in overruling appellant's motion to discharge him.

4. The court erred in overruling appellant's motion for a new trial.

5. The court erred in refusing to grant further time to the official reporter of the Fountain Circuit Court, on the written application of the defendant and said reporter to prepare a longhand transcript of the evidence in the trial of said cause.

In construing §2239 Burns Ann. Ind. St. 1926 (Acts of 1905, p. 584, §207) this Court has repeatedly held

---

[2] §2425, Burns, etc. Supp. 1929, §1, ch. 54 p. 136, Acts 1929, is as follows:

"Whoever forcibly and feloniously takes from the person of another any article of value, by violence or by putting in fear, is guilty of robbery, and, on conviction, shall be imprisoned in the state prison for any determinate period not less than ten years nor more than twenty-five years, and be disfranchised and rendered incapable of holding any office of trust or profit for such period as the court may determine. Whoever perpetrates an assault, or an assault and battery upon any human being, with intent to commit robbery, shall on conviction, suffer the same penalty as prescribed for robbery * * *."

§2548, Burns, etc. Supp. 1929, §3, ch. 54 p. 136, Acts 1929, is as follows:

"If any person or persons shall commit or attempt to commit a felony, having at the time on or near the premises where such felony is attempted or committed, an automobile, motorcycle, aeroplane, or other self-moving conveyance, by the use of which he or they escape, attempt to escape or intend to escape, or having attempted or committed such felony, he or they seize an automobile, motorcycle, aeroplane, or other self-moving conveyance, by the use of which he or they escape or attempt to escape, he, they and each of them shall be guilty of automobile banditry, and, upon conviction thereof, shall be imprisoned in the state prison for any determinate period not less than ten years nor more than twenty-five years."

that it is within the discretion of the trial court ██ to grant a change of venue from the county in cases where the punishment can not be death; and the action of the court will not be reversed on appeal unless it appears that there was an abuse of such discretion.[3] Appellant's brief contains no contention that the trial court abused its discretion in refusing to grant a change of venue from the county and it does not appear that there was any abuse of discretion on the part of the trial court in that respect.

Appellant's motion in arrest of judgment assigned the following causes:

1. That the facts stated in the said affidavit do not constitute a public offense in the State of Indiana.

2. That the facts set forth in the affidavit do not constitute the public offense of intent to commit robbery, under the laws in the State of Indiana, nor of an assault thereof.

3. That the court herein did not have jurisdiction of said cause.

4. That the verdict returned by the jury is not warranted by the facts set forth in the affidavit under the laws of the State of Indiana.

Section 2326 Burns, etc., 1926[4] (Acts 1905, p. 584,

---

[3] *Hinkle* v. *State* (1910), 174 Ind. 276, 91 N. E. 1090; *Leach* v. *State* (1912) 177 Ind. 234, 97 N. E. 792; *Smith* v. *State* (1917), 186 Ind. 252, 115 N. E. 943; *Hinshaw* v. *State* (1919), 188 Ind. 447, 124 N. E. 458; *Chizum* v. *State* (1932), 203 Ind. 450, 180 N. E. 674.

[4] §2326, Burns, etc. 1926, Acts 1905, p. 584, §283, as amended, Acts of 1925, p. 490, ch. 203, is as follows:

"A motion in arrest of judgment is an application in writing, on the part of the defendant, asking that no judgment be rendered on a plea, finding or verdict of guilty, and may be granted by the court for either of the following causes:

First. That the grand jury which found the indictment had no legal authority to inquire into the offense charged, for the reason that such offense was not within the jurisdiction of the court.

Second. That the facts stated in the indictment or affidavit do not constitute a public offense.

The court may also, on its view of any of these defects, arrest the judgment without motion.

The effect of allowing a motion in arrest of judgment is to

§283, as amended, Acts of 1925, p. 490) defines a motion in arrest of judgment and provides the causes for which it may be granted. *Tokacs* v. *State* (1930), 202 Ind. 259, 173 N. E. 453.

Appellant presents no question in his brief as to the first of the statutory causes for a motion in arrest of judgment but in reliance upon the second cause contends that "the affidavit must contain the elements of the crime as shown by the verdict," citing *Ellis* v. *State* (1895), 141 Ind. 357, 40 N. E. 801. In that case this Court said:

> "Another reason urged in favor of the motion in arrest is that the verdict was defective. We do not think a motion in arrest should be sustained for this cause alone. It may well be that the verdict may be looked to in connection with the indictment or information to determine the sufficiency of the latter in passing upon the motion in arrest; but the only reason given in the statute for arresting a judgment . . . relate to the jurisdiction of the court trying the case, and the sufficiency of the indictment or information to charge the defendant with a public offense."

The effect of the holding in that case is that if the indictment or affidavit is sufficient, a motion in arrest of judgment should not be sustained solely because the verdict is defective. In the instant case there is no contention that the affidavit does not state facts sufficient to constitute *a* public offense, but the contention is that the affidavit does not state facts sufficient to constitute *the* public offense of which appellant was convicted. This Court has held that if a person is found guilty of an offense that is not charged

---

place the defendant in the same situation in which he was before the indictment was found or affidavit filed, except in cases otherwise provided for: Provided, That such motion in arrest of judgment may be filed either before or after the motion for new trial and the filing of such motion shall not preclude the right of the defendant to subsequently file a motion for a new trial "

in the indictment, the verdict is contrary to law. *Mc-Guire* v. *State* (1875), 50 Ind. 284; *Thetge* v. *State* (1882), 83 Ind. 126. That a verdict is contrary to law is a statutory cause for new trial. (§2325 Burns, etc., 1926, 9th cl., Acts 1905, p. 584, ch. 169, §282.) Therefore, the court did not err in overruling appellant's motion in arrest of judgment.

The motion to discharge the defendant was made on the ground "that the verdict of the jury is contrary to and is not embraced in the allegation set forth in the affidavit." If the verdict was defective for the reason given by appellant, it was contrary to law and therefore would entitle appellant to a new trial, but, under §2324 Burns, *supra*,[5] he would not be entitled to be discharged and his motion was properly overruled.

Appellant's motion for a new trial contained 14 causes, eight of which predicated error on the giving or refusing to give certain instructions. We have examined these causes, and, with the exception of three of the court's instructions, find no error and feel that a discussion of the court's action thereon would involve only questions which are well settled and would not be of any value for a new trial. The error involved in the court's instructions Nos. 2, 3 and 18 will be covered later in our discussion of the appellant's 8th cause for a new trial,—"that the verdict of the jury is contrary to law."

Appellant's 12th cause for a new trial presents for review the action of the court on March 28th, after the jury returned its verdict, in remanding the defendant to the custody of the sheriff pending the rendition of judgment upon the verdict. Judg-

---

[5] §2324, Burns, etc., 1926, Acts 1905, p. 584, ch. 169, §281, is as follows:

"The granting of a new trial places the parties in the same position as if no trial had been had; the former verdict can not be used or referred to, either in the evidence or the argument."

ment was rendered on April 17th. The Indiana Constitution (Art. I, §17) provides that "offenses, other than murder and treason, shall be bailable by sufficient sureties." The form of recognizance bond required in criminal proceedings for the appearance of the defendant is prescribed by §§2112 and 2184 Burns, etc., 1929. (Acts 1927, ch. 132, p. 411, §§2 and 6.) The condition of the bond is that the prisoner shall appear in court on the day named to answer the charge "and from day to day and from term to term thereof, and abide the order of the court until said cause is determined and not depart therefrom without leave." It is provided in §2185 Burns, etc., 1929 (Acts of 1927, p. 415, §7) that such recognizance "shall be continuing, and the defendant shall not be required to renew it during the pendency of the proceedings, unless ordered to do so by the court for cause shown." A recognizance taken in conformity with the foregoing statutes is not discharged by the return of a verdict but continues to bind the principal and sureties thereon after the verdict of the jury is returned and if the defendant fails to appear for the pronouncement of judgment the recognizance shall be declared forfeited in accordance with §2193 Burns, etc., 1926[6] (Acts 1905, p. 584, §159).

> "The liability of the principal and his sureties upon a recognizance in a criminal case is made to depend upon the neglect of the defendant, without sufficient excuse, to appear for trial or judgment, or upon any other occasion when his presence may be lawfully required according to the condition of his bond." *State* v. *Hindman* (1903), 159 Ind. 586, 588, 65 N. E. 911.

Therefore the appellant was entitled to continue to go, after the return of the verdict, under the recognizance theretofore entered into unless he was surren-

---

[6] *State* v. *Whitson* (1846), 8 Blackf. 178; *Campbell* v. *State* (1862), 18 Ind. 375, 81 Am. Dec. 363.

dered by a surety on such recognizance under §2189 et seq. Burns, etc.[7] (Acts 1905, p. 584, §155 et seq.), or unless the court should require appellant to renew his recognizance "for cause shown" as provided in §2185, *supra,* and he should fail to do so.

It does not follow that the court's error in remanding the appellant to the custody of the sheriff pending the rendition of judgment constituted sufficient cause for a new trial, even though, as appellant contends, it constituted an irregularity in the proceeding of the court. The statutory cause for new trial upon which appellant relies is as follows:

"Irregularities in the proceedings of the court or jury, or any order of the court, or abuse of discretion, by which the defendant was prevented from having a fair trial." §2325 Burns, etc., 1926, cl. 1 (Acts of 1905, p. 584, §282).

It is not every irregularity in the proceedings which affords sufficient grounds for a new trial, but only such irregularities as prevent the defendant "from having a

---

[7] "When a surety on any recognizance desires to surrender his principal, he may procure a copy of the recognizance from the clerk, by virtue of which such surety, or any person authorized by him, may take the principal in any county within the state." §2189 Burns, etc., 1926.

"Any surety, at any time before final judgment against him upon a forfeited recognizance, may surrender his principal in open court, or to the sheriff, and, upon payment of such costs as the court may adjudge to be paid by him, may thereupon be discharged from any further liability upon the recognizance." §2190 Burns, etc., 1926.

"Such surety must deliver a certified copy of the recognizance to the sheriff, with the principal; and the sheriff must accept the surrender of the principal, and acknowledge it in writing." §2191 Burns, etc., 1926.

"Any defendant so surrendered may give other surety, or remain in custody until discharged by due course of law." §2192 Burns, etc., 1926.

"If, without sufficient excuse, the defendant neglects to appear for trial or judgment, or upon any other occasion when his presence in court may be lawfully required, according to the condition of his recognizance, the court must direct the fact to be entered upon its minutes, and the recognizance, or money deposited in lieu theref, as the case may be, is thereupon forfeited." §2193 Burns, etc., 1926.

fair trial." Action taken by the court with respect to the custody of the defendant after the verdict had been returned by the jury and the jury had been discharged could not have affected the trial of the defendant.

Appellant's fifth assignment of error is based upon the court's refusal to grant further time in which to secure a long-hand transcript of the evidence. It appears that the verdict was returned on March 28, 1931; that on April 17th appellant filed his motion for new trial which was, on that date, overruled and judgment was pronounced. Defendant prayed an appeal the same day, April 17th, and 100 days were given for filing bills of exceptions, or until July 27th. On July 15th appellant filed his verified application for an extension of time to file Bills of Exceptions, which application was supported by the affidavits of appellant's attorney and the official stenographer. The affidavits were to the effect that upon "the.........day of June" the appellant engaged the official stenographer to prepare a longhand transcript of all the evidence but that "on account of the numerous cases, on trial in the Fountain Circuit Court during the April Term, 1931, and further on account of the continuance of the said April Term, 1931, and the extra work required by affiant on account thereof, affiant says she is unable to complete a transcript of the evidence in said cause within the time fixed by the court for the defendant to file his Bill of Exceptions." The Code of Criminal Procedure (§2330 Burns, etc., 1926) provides that "all bills of exceptions must be presented within the time allowed" and under §687 Burns, etc., 1926[8] the court or

---

[8] Though §687 Burns Ann. Ind. St. 1926, Acts of 1911, ch. 114, p. 193, is classified in Burns Ann. Ind. Statutes, 1926, under "Civil Procedure" it repeals and replaces ch. 40, Acts of 1905, p. 45, which read as follows:

"Whenever time has been given in which to file any bill of exceptions, the court, if in session, or the judge thereof, in vaca-

judge may grant a reasonable extension of time within which to file such bill of exceptions. However, §687 provides that it must be shown that "the failure or inability of the court reporter was not caused by the negligence of the party asking such re-extension of time." In this case appellant's application showed that on April 17th time within which to file a bill of exceptions was granted and that on the........day of June the appellant engaged the official court stenographer to prepare a transcript of the evidence. The trial court's action denying appellant's application for further time might very properly have been based on the fact that the appellant had failed to show that "the failure or inability of the court reporter to prepare and furnish a transcript of the evidence . . . was not caused by the negligence" of the appellant. Therefore it cannot be said that the court erred in denying the application.

Appellant's 8th cause for a new trial, that the verdict was contrary to law, is supported by the proposition that the offense of assault with intent to rob, the offense of which the appellant was

---

tion, may, on a proper showing under oath, either in term time or vacation, grant an extension of time. And it shall be the duty of such court or judge to grant a reasonable extension of time to file a bill of exceptions containing the evidence: Provided, The failure to tender such bill of exceptions is due to the inability or failure of the court reporter to prepare and furnish a transcript of the evidence. If the extension of time is granted by the judge in vacation, such action may be indicated by a recital in the bill of exceptions itself, but if such extension is granted in term time, the same may be indicated by an order of court, duly entered on the order book, of which all parties to such suit shall take notice: Provided, Such application for such extension must be made prior to the expiration of the time first given."

There is nothing in the act which would indicate that it is limited to civil procedure, and §687, *supra,* has been considered as authorizing an extension of time to file a bill of exceptions in criminal cases. *Kristian* v. *State* (1929), 89 Ind. App. 50, 165 N. E. 784.

The act of 1911, §687, *supra,* omitted the mandatory feature of the act of 1905: "And it shall be the duty of such court or judge to grant a reasonable extension of time to file a bill of exceptions containing the evidence."

found guilty, was not charged by the affidavit. It is clear that the affidavit was drawn for the purpose of charging automobile banditry as defined by §3, ch. 54, p. 137, Acts of 1929 (see *supra*, p. 215, note 2). We think it is equally clear that the affidavit alleges an attempt to commit a robbery, and if the defendant had been guilty of automobile banditry there would be no question that such verdict would have been warranted by the facts alleged in the affidavit. If it can be said that the affidavit contains facts sufficient to charge an assault, or if it can be said that an assault is necessarily included in an attempt to commit robbery it would follow that there are sufficient facts in the affidavit to constitute a charge of assault with intent to commit robbery. But a charge of an "attempt to commit robbery" does not necessarily include an assault; moreover, we are convinced that the facts in the affidavit do not constitute an express allegation of an assault; nor is there an allegation that a violent injury was actually committed from which it would be inferred that there was the present ability to commit the threatened injury.[9]

---

[9] "An attempt to commit the offense of robbery implies the performance of an overt act in part execution of the intended offense. 'An attempt implies the exercise of physical force directed to some definite end, an actual entering upon the execution of a purpose, which, if not prevented, or diverted, will result in the violent injury intended.' (*Hollister* v. *State*, 156 Ind. 255, 258; 59 N. E. 847.) An overt act which would constitute an attempt to rob would not necessarily constitute an assault upon the person. Courts have considered many overt acts sufficient to constitute attempted robbery when such acts did not consist of an assault upon the person of the intended victim of the robbery. (*People* v. *Rizzo* [1927], 246 N. Y. 334, 158 N. E. 888, 55 A. L. R. 711; annotation in 55 A. L. R. 714.) The words used do not import the present ability of the appellant to commit a violent injury upon Linker's person nor do they allege the use of force and violence upon the person of Linker." ... "Where an assault is charged as an element of a felony consisting of such assault, coupled with an intent to commit a crime of violence against the person of another such as an assault with intent to murder, the indictment must allege that the defendant had the present ability

On the basis of the foregoing discussion it is evident that the verdict was contrary to law. We are convinced, however, that the verdict would have to be considered contrary to law even if the affidavit expressly alleged an assault with intent to rob in view of the peculiar force of §§5 and 6, ch. 54, p. 138, Acts of 1929 (§§2341.1 and 2341.2 Burns Ann. Ind. St. Supp. 1929). Section 5 is a limitation on the power of the judge of the trial court to sentence a convicted defendant for a lesser offense than the one charged and prohibits suspension or commutation of sentence. The somewhat unsatisfactory phraseology of §6 is evidently intended to mean that when a defendant is on trial charged with the commission of one of the offenses enumerated in the Act of 1929 he cannot be found guilty of another offense. Automobile banditry, as defined by §3 of the act just mentioned (§2548, *supra*), is composed of either (1) a felony or (2) an attempt to commit a felony, combined either with the having of an automobile at hand with which to escape, or with an attempt to escape in an automobile from the scene of the commission or attempted commission of a felony. Section 3 creates and defines a new and specific offense of automobile banditry, the characterizing element being the having of an automobile at hand with which to escape, or the seizing of an automobile with which to escape. The offense, and the only offense, defined in §3 is automobile

---

to commit the threatened injury. And this, undoubtedly, is good law. But where the assault is alleged in connection with a charge that the violent injury was in fact committed upon the person of the prosecuting witness, the ability of the defendant to commit the injury need not be otherwise averred. The inference of his present ability to commit the injury results inevitably from the allegation that he did actually commit it." *Craig* v. *State* (1901), 157 Ind. 574, 575, 62 N. E. 5, 6.

See also *Hays* v. *State* (1881), 77 Ind. 450; *State* v. *Swails* (1857), 8 Ind. 524; Am. Dec. 772; *Howard* v. *State* (1879), 67 Ind. 401; *State* v. *Hubbs* (1877), 58 Ind. 415; *Adell* v. *State* (1870), 34 Ind. 543; *Craig* v. *State, supra; Thompson* v. *State* (1921), 191 Ind. 164, 132 N. E. 296.

banditry, although, by definition, automobile banditry includes the elements of the commission or attempted commission of a felony. We think it is evident from §§5 and 6 of the act in question that the General Assembly intended to exclude "lesser offenses" from the consideration of court and jury and to limit the issue to the guilt or innocence of the defendant of the offense expressly charged and as defined in that section under which the prosecution is brought. This Court gave effect to that intent in *Mahoney* v. *State* (1932), 203 Ind. 421, 180 N. E. 580. We understand by the term "lesser offense" as used in §§5 and 6 an offense which is necessarily included in the offense defined in the particular section of the act; an offense of which the defendant might be found guilty under §§2312 and 2313 Burns, etc., 1926 (Acts 1905, p. 584, §§271 and 272) if it were not for the restrictive features of §§5 and 6, *supra*. We realize that the term "lesser offense" is used as synonymous with "a less serious offense" or "a minor offense" when the one using the term is considering the quality of a criminal act or the severity of the penalty imposed. But since it is clear that one can not be convicted of a lesser offense than the one charged in the indictment or affidavit unless the lesser offense is necessarily included in the offense charged, the General Assembly must have intended that "lesser offense" as used in the statute should mean any offense necessarily included in any one of the offenses defined in the act. In short, the act must be construed to mean that if a defendant is charged with the offense of automobile banditry as defined in §3 he can not be convicted of assault with intent to rob even though the indictment or affidavit may describe an assault with intent to rob as one of the necessary elements of the composite offense of automobile banditry. The allega-

tion of facts showing an assault with intent to rob must be considered as merely stating an ultimate fact which constitutes one of the essentials of the composite offense defined by the section of the statute and not as a charge of the separate offense of assault with intent to rob.

There is, of course, some practical advantage in the rule of our statutory law which permits a jury to find a defendant guilty of an offense which is necessarily included in the offense expressly charged in an indictment or affidavit and second trials have been avoided frequently by this rule. But it may well be that juries are often confused by being required to make a choice between several offenses in the face of voluminous and conflicting evidence and many difficult instructions. If under a charge of automobile banditry a defendant may be convicted of any one of the offenses of automobile banditry, robbery, assault with intent to rob, assault, grand larceny or petit larceny, it follows that the defendant is entitled to have the jury fully instructed by the trial court as to the law applicable to each offense. It is easy to understand how uncertainty in the minds of the jurors as to distinctions between the various offenses might be confused by the jurors with honest doubt as to the defendant's guilt as to any of them. It is possible that many strange verdicts in homicide cases have been due to uncertainty and confusion in the minds of jurors engendered by the necessity of determining the law and the facts in the light of sets of instructions covering the different degrees of criminal homicide. No doubt some such considerations as the foregoing induced the General Assembly to limit the consideration of trial court or jury to the one offense charged, whenever one of the serious offenses defined in Chapter 54 of the Acts of 1929 is involved.

It follows that the verdict of the jury was contrary

to law, because the offense of assault with intent to rob was excluded as an issue by the statute. It was, therefore, error for the court to give instructions 2, 3 and 18 which informed the jury that the defendant could be convicted of assault with intent to rob. Appellant's motion for new trial should have been sustained.

The judgment of the lower court is reversed and the cause remanded with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.